1  MARTIN D. SINGER (BAR NO. 78166)
   EVAN N. SPIEGEL (BAR NO. 198071)
2  LAVELY & SINGER PROFESSIONAL CORPORATION
   2049 Century Park East, Suite 2400
3  Los Angeles, California 90067-2906
   Telephone: (310) 556-3501
4  Facsimile: (310) 556-3615
   E-Mail: espiegel@lavelysinger.com
5
   Attorneys for Plaintiff
6  DANIEL MASTERSON

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    WESTERN DIVISION

11

12 DANIEL MASTERSON, an          ) CASE NO. CV 08-116 R (CWx)
   individual,                   ) [Hon. Manuel L. Real, Ctrm. 8]
13                               )
            Plaintiff,           )
14                               ) FIRST AMENDED COMPLAINT
       vs.                       ) FOR:
15                               )
   944 MEDIA, INC, a corporation;) 1.  VIOLATION OF
16 944 MEDIA, LLC, a limited     )     CALIFORNIA CIVIL CODE
   liability company; ML MEDIA,  )     SECTION 3344
17 LLC, a limited liability company;) 2. MISAPPROPRIATION OF
   944 MAGAZINE, LLC, a limited  )     COMMON LAW RIGHT OF
18 liability company; WENDOH     )     PUBLICITY
   MEDIA, LLC, a limited liability) 3. QUANTUM VALEBANT
19 company; and DOES 1 through 10,)
   Inclusive,                    )
20                               ) [JURY TRIAL DEMANDED]
            Defendants.          )
21                               )
                                 ) Date Action Filed: December 3, 2007
22                               ) Action Removed:    January 8, 2008

23      Plaintiff DANIEL "DANNY" MASTERSON (herein "Masterson" and/or

24 "Plaintiff") alleges as follows:

25                    **THE NATURE OF THIS ACTION**

26      1.   This action is necessitated by *944* Magazine, 944 Media and WenDoh

27 Media's intentional fraudulent advertising and blatant misappropriation of Danny

28 Masterson's celebrity name and photograph for their own economic advantage.

---

3697-3\PLE\COM-AMEND1 011508                1              FIRST AMENDED COMPLAINT

Without authorization, defendants knowingly deceived the public and falsely advertised and promoted its recent "944 Vegas 2 Year Anniversary Party" at the Hard Rock Hotel & Casino (the "Event") to purportedly feature music and DJ performances from celebrity DJ, actor and producer Danny Masterson.

2.  Masterson had expressly passed on any participation in the event. Despite that fact, in an effort to illegally capitalize on Masterson's fame and popularity with the intended key demographic, defendants proceeded to illegally download and steal an unapproved unauthorized photograph of Masterson and than prominently plastered it onto flyers, websites and advertisements falsely promoting him as a featured performer at the Event. When Masterson learned of defendants' wrongful actions, he demanded defendants cease their wrongful conduct.

3.  In response, showing that the publisher defendants are merely low-class thugs, defendants outright threatened to black-ball Masterson from the Las Vegas performance industry should he refuse to drop the issue and allow defendants to get away with their blatant misappropriation and deception. Defendants deceptively made it appear as if Masterson had been booked, but was a no-show, tarnishing his reputation. Defendants showed no remorse for misappropriating Masterson's name and photograph, nor for having deceived Masterson's fans, the public and the magazine's readers. Masterson, however, will not sit by and allow the 944 Media defendants to tarnish his reputation and attempt to bully him, nor to cheat him, his fans and the public alike.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### The Parties

4.  Plaintiff Danny Masterson is, and at all times relevant hereto was, a resident of the County of Los Angeles, State of California, and is a popular television and film actor, producer and celebrity, and much sought-after celebrity DJ performer. Although Masterson is a well accomplished actor with and long and impressive list of credits, he is most well known for his recent co-staring role in the

1  hit television show "*That 70's Show*" (1998-2006), viewed by many millions in the
2  United States and throughout the world. Masterson is also well known as an
3  exclusive event celebrity DJ performer through-out the country, including, but not
4  limited to, in the Hollywood and Las Vegas entertainment and nightlife scene, under
5  his DJ stage names "DJ DonkeyPunch" and, more recently, "DJ MomJeans." To
6  protect and keep his public and acting persona distinctive, Masterson does not use
7  his real (and Hollywood credit) name for any DJ appearances unless, under rare
8  circumstances, discussed and approved in writing by his representatives.

9      5.    Plaintiff is informed and believes and based thereon alleges that
10 Defendant 944 MEDIA INC (hereinafter "944 Media") is, and at all times relevant
11 hereto was, a corporation organized and existing under the laws of the State of
12 Nevada, and registered and doing business in the County of Los Angeles, State of
13 California, California company id number C2720593. 944 Media maintains
14 regional sales and marketing offices in a number of cities and states, including in
15 West Hollywood, California, Newport Beach, California, and in San Diego,
16 California. 944 Media owns and distributes different regional print publications
17 under the name *944* Magazine ("944 Magazine"), a free regional magazine
18 supported by advertising that provides local entertainment, dining and nightlife scene
19 content to their key demographic of affluent twenty-and-thirty-somethings for
20 several major markets, including Los Angeles, San Diego, Newport Beach, San
21 Francisco, Las Vegas and Phoenix. 944 Media publishes and operates the web sites
22 944.com and 944Life.com (the "944 Websites"), regionally covering and paralleling
23 the same major markets as its free print publications.

24     6.    Plaintiff is informed and believes and based thereon alleges that
25 Defendant 944 MEDIA LLC (hereinafter "944 Media LLC") is, and at all times
26 relevant hereto was, a limited liability company organized and existing under the
27 laws of the State of Arizona, and registered and doing business in the County of Los
28 Angeles, State of California. Plaintiff is informed and believes and based thereon

1  alleges that 944 Media LLC is a parent, subsidiary, partner, joint-venturer or
2  affiliated entity of 944 Media.

3        7.    Plaintiff is informed and believes and based thereon alleges that
4  Defendant 944 MAGAZINE LLC (hereinafter "944 Magazine LLC") is, and at all
5  times relevant hereto was, a limited liability company organized and existing under
6  the laws of the State of Arizona, and registered and doing business in the County
7  of Los Angeles, State of California. Plaintiff is informed and believes and based
8  thereon alleges that 944 Magazine LLC is a parent, subsidiary, partner, joint-
9  venturer or affiliated entity of 944 Media.

10       8.    Plaintiff is informed and believes and based thereon alleges that
11 Defendant ML MEDIA, LLC (hereinafter "ML Media LLC") is, and at all times
12 relevant hereto was, a limited liability company organized and existing by virtue of
13 the laws of the State of Arizona, and doing business in the County of Los Angeles,
14 State of California. Plaintiff is informed and believes and based thereon alleges that
15 ML Media LLC is a parent, subsidiary, partner, joint-venturer or affiliated entity
16 of 944 Media.

17       9.    Plaintiff is informed and believes and based thereon alleges that
18 Defendant WENDOH MEDIA LLC (hereinafter "WenDoh Media") is, and at all
19 times relevant hereto was, a corporation organized and existing by virtue of the laws
20 of the State of Nevada, and doing business in the County of Los Angeles, State of
21 California. Plaintiff is informed and believes and based thereon alleges that
22 WenDoh Media is a partner or joint-venturer of 944 Media. Plaintiff is further
23 informed and believes and based thereon alleges that Ryan Doherty is a principal or
24 managing member of WenDoh Media. 944 Media, 944 Media LLC, 944 Magazine
25 LLC, ML Media LLC and WenDoh Media shall sometimes collectively hereinafter
26 be referred to as the "944 Defendants" and/or "Defendants").

27       10.    Plaintiff is informed and believes and based thereon alleges that 944
28 Defendants, and each of them, were the agents, employees, partners, joint-

1  venturers, co-conspirators, owners, principals, and employers of the remaining
2  Defendants, and each of them, and are, and at all times herein mentioned were,
3  acting within the course and scope of that agency, partnership, employment,
4  conspiracy, ownership, or joint venture. Plaintiff is further informed and believes
5  and based thereon alleges that the acts and conduct herein alleged of each such 944
6  Defendant were known to, authorized by, and/or ratified by the other 944
7  Defendants, and each of them.
8      11.   Plaintiff is informed and believes and based thereon alleges that 944
9  Media LLC, 944 Magazine LLC, ML Media LLC, WenDoh Media and Does 1
10 through 10, inclusive, were and are completely owned, controlled, dominated, used,
11 managed and operated by and on behalf of 944 Media and intermingled their assets
12 and identities to such an extent that 944 Media LLC, 944 Magazine LLC, ML
13 Media LLC, WenDoh Media and Does 1 through 10, inclusive, are the alter ego of
14 944 Media, and are one and the same entity. Plaintiff further alleges on the basis
15 of information and belief that 944 Media LLC, 944 Magazine LLC, ML Media
16 LLC, WenDoh Media and 944 Media intermingled their assets and identities to such
17 an extent that they are alter egos of one another, and/or that they are each are mere
18 shells by which 944 Media conducts business, or visa versa. Plaintiff further allege
19 on the basis of information and belief that each of the 944 Media, 944 Media LLC
20 944 Magazine LLC, ML Media LLC, WenDoh Media entities failed to maintai
21 corporate identities separate and distinct from one another such that the adheren
22 to the function of the separate existence of each of those entities would prom
23 injustice and sanction fraud upon Plaintiff.
24     12.   Plaintiff is informed and believes and based thereon alleges that
25 fictitiously-named Defendants sued herein as Does 1 through 10, inclusive, and e
26 of them, were in some manner responsible or legally liable for the actions, eve
27 transactions and circumstances alleged herein. The true names and capacitie
28 such fictitiously-named Defendants, whether individual, corporate, associat

1 | otherwise, are presently unknown to Plaintiff and Plaintiff will seek leave of Court to amend this Complaint to assert the true names and capacities of such fictitiously-named Defendants when the same have been ascertained. For convenience, each reference to a named 944 Defendant herein shall also refer to the Doe Defendants and each of them.

## Background Facts

13. Masterson is a popular television and film actor, producer and celebrity, and much sought-after celebrity DJ performer, who, has co-starred in and received substantial notoriety for his performances in the hit television show *"That 70's Show"* (1998-2006), viewed by many millions in the United States and throughout the world. Masterson has a long established acting career and has had roles in such popular television programs as *"Mad TV"* (2004, 2002), *"Cybill"* (1996-1998), *"NYPD Blue"* (1997, 1994), *"Party of Five"* (1996) and *"Roseanne"* (1994). As a result of his well-known and recognizable Hollywood persona and celebrity, Masterson has appeared as himself in a variety of shows and entertainment programs, including, but not limited to, *"That Guy"* (2006), *"Punk'd"* (2005, 2003), *"Poker Royale: The James Woods Gang vs. The Unabombers"* (2005), *"Entourage"* (2005), *"E! Hollywood Hold'em"* (2005), *"The Oprah Winfrey Show"* (2005), *"Late Night with Conan O'Brien"* (2004), *"2004 World Series"* (2004), *"Celebrity Poker Showdown"* (2004), *"Comedy Central Presents: The Commies"* (2003), *"MTV Bash: Carson Daly"* (2003), *"2003 Much Music Video Music Awards"* (2003), *"Making the Show: 'That '70s Show'"* (2003) and *"The Rosie O'Donnell Show"* (2002). Masterson also has staring or major roles in the upcoming theatrical motion pictures *"Smiley Face"* (2007), *"Capers"* (2007), *"Made for Each Other"* (2008), *"The Bridge to Nowhere"* (2008) and *"Yes Man"* (2008).

/ / /
/ / /

14. Masterson frequently performs as the guest DJ in several highly popular and exclusive clubs, going by the names "DJ DonkeyPunch" and, more recently, "DJ MomJeans". To protect his public persona and ensure that the value of his name and persona is not diminished by association with non-Hollywood or non-acting services, Masterson rarely uses his real (and Hollywood credit) name for DJ appearances, and when on occasion it is used, it is attached as an "a/k/a" in conjunction with and only after his DJ name.

15. Masterson has spent considerable time, energy and money developing his career first as a television and film actor and producer, and second, under a stage name, as a celebrity DJ performer. Through years of labor, Masterson has developed sufficient skill, reputation, notoriety and virtues to create considerable commercial value in his identity. The marketable product of that labor is the ability of Masterson's name or likeness to attract the attention and evoke a desired response in a particular consumer audience. Masterson's name, image and likeness are now recognized by the public, particularly by the teen, twenty and thirty year-old demographics, and have substantial commercial value. The commercial value of Masterson's identity can be diminished by an unauthorized use of his image and persona.

16. Masterson and his representatives carefully limit and restrict the use and publication of authorized uses of Masterson's name and photograph outside those uses directly related to his film and television performances. Masterson rarely appears in advertising for products or company brands. Masterson exercises careful consideration prior to permitting commercial uses of his name, photograph, image and likeness for any purpose in order to ensure that he is associated with products, entertainment, services and/or companies in which he believes, to ensure that the value of his persona is not diminished either by association with products, entertainment, services and/or companies which he does not personally desire to support, and/or by over-saturation of his image. Masterson exercises careful

1  consideration as to any uses of his name and likeness to maximize the commercial value in his identity, to limit the potential harmful consequences to that commercial value caused by improper and inappropriate use of his image.

17. Plaintiff is informed and believes and based thereon alleges that the 944 Defendants are engaged in the business of printing, distributing and promoting its print publication 944 Magazine, a free regional magazine supported by advertising that provides local entertainment and nightlife scene content to their key demographic of affluent twenty-and-thirty-somethings for several major markets, including Los Angeles, San Diego, Newport Beach, San Francisco, Las Vegas and Phoenix. The 944 Defendants publish and distribute various regional versions of 944 Magazine and publish and promote the 944 Websites and its services.

## The Misappropriation

18. Plaintiff is informed and believes and based thereon alleges that the 944 Defendants fraudulently and without authorization advertised and promoted their recent "944 Vegas 2 Year Anniversary Party" at the Hard Rock Hotel & Casino (the "Event") to purportedly feature music and DJ performances from Danny Masterson. These representations were false. Neither Masterson nor his representatives ever authorized the 944 Defendants to present, promote or advertise Masterson's alleged DJ appearance or to use Masterson's name and photograph, and Masterson did not agree to participate in the 944 Event.

19. In late-May through mid-June 2007, independent promoter Zen Freeman of Zen Events LA approached Masterson's representative, Jenni Weinman, about Masterson's schedule availability and terms for a potential booking. After a series of e-mail communications about the potential details, Masterson <u>expressly passed on his participation in the event</u>. Weinman informed Zen Events, on or about June 14, 2007, that Masterson was passing on the Event as he would be out-of-town the weekend of the Event for a film production commitment. No agreement was ever reached for Masterson's appearance or participation in the Event, and no

1 | contract was ever put into motion.

2 |     20.   On June 14, 2007, Chad Pallas, director of special events at the Hard Rock Hotel & Casino, telephoned Weinman about the Event and Masterson's purported participation by the 944 Defendants. Weinman informed Pallas that Masterson had <u>never</u> agreed to participate in the Event and had passed on the Event due to both scheduling conflicts for his current film and due to the fact that he did not want to be associated with the 944 brand and Magazine. Pallas responded that he hadn't been informed, admitted he had never seen any agreement or contract or had any contact himself with Masterson's representative, and apologized for the matter. Masterson and his representatives heard nothing further about the Event and had no further contact with the PR department at the Hard Rock Hotel & Casino, or anyone else associated with the Event, until the weekend of the Event.

    21.   Irrespective of the fact that the 944 Defendants did not have any authorization from or agreement or contract with Masterson, and despite their notice of the same, the 944 Defendants blatantly choose to prominently use and feature Masterson's name and photograph promoting the Event and an alleged DJ performance by Masterson for the night of Saturday, June 30, 2007. In furtherance of their scheme to illegally capitalize on Masterson's fame and popularity with the intended key demographic, the 944 Defendants (publishers and copyright holders themselves) proceeded to illegally misappropriate an unapproved unauthorized photograph of Masterson from a online source in violation of copyright, without license and without paying a syndication use fee. The 944 Defendants than prominently plastered the unauthorized photograph onto its flyers, website and advertisements falsely promoting Masterson as the featured performer at the Event (the "Advertisement(s)"). To make matters worse and to further misappropriate the value of Masterson's celebrity, the 944 Defendants prominently displayed and advertised the name "Danny Masterson" as the celebrity DJ, not Masterson's DJ stage name.

22. On Friday, June 29, 2007, prior to the commencement of the Event (and the night prior to the fraudulently advertised performance), Masterson was informed that his name and photograph were on the Advertisements promoting the "944 Vegas 2 Year Anniversary Party" at the Hard Rock Hotel & Casino. After Masterson learned of the 944 Defendants' blatant unauthorized use of his name and likeness, his representative made repeated calls to and left repeated voice and text messages for the 944 Defendants, their third-party booking agent and personnel at the Hard Rock Hotel & Casino, objecting to the unauthorized Advertisements and demanding that the 944 Defendants immediately cease their wrongful conduct. Weinman was able to contact Pallas about the unauthorized flyer and false advertisements, and demanded that the infringement cease and the Advertisements be pulled. Pallas stated that Ryan Doherty, a principle and managing member of the 944 Defendants, was the responsible person to contact. Weinman spent all weekend leaving messages for and attempting to contact Doherty, who refused to return her calls.

23. Despite the calls, objections and cease and desist demands, the 944 Defendants never-the-less proceeded with their fraudulent unauthorized use of Masterson's name and photograph, knowingly and intentionally deceiving Masterson's fans, Event-goers, the public and the magazine's readers alike. Defendants intentionally and deceptively caused it appear to Masterson's fans, Event-goers and potential future employers, as if Masterson had been booked, but was a no-show, thereby tarnishing his reputation.

24. Only after the conclusion of the Event, on July 2, 2007, after the damage was done and after the 944 Defendants repeated the benefit of the unauthorized use of Masterson's name and photograph in promotion for the Event, did Ryan Doherty finally return the calls and messages. Doherty, expressly admitted to what he called a "mistake" for the blatant and calculated unauthorized use of Masterson's name and photograph, and for his printing the invites and

promotional materials without ever seeing a contract, or bothering to confirm Masterson's participation and without having made any arrangements of any kind for his purported feature appearance.

25. After the damage had been done, and in response to Masterson's continued objections and in response to being informed of Masterson's damages and claims against the Defendants, Doherty became extremely rude and hostile and than outright <u>expressly threatened to "blackball" Masterson</u> from the Las Vegas performance industry should Masterson refuse to drop the issue and allow defendants to get away with their blatant misappropriation, deception and fraud. Doherty <u>sought to extort Masterson and threatened him</u>, stating to Masterson's representative that he would "pick up the phone with" his alleged "partner" at a top Las Vegas management group and that he would "<u>make sure that no one in Vegas worked with Danny again</u>," and that his "partner" "<u>would drop Danny in two seconds</u>."

26. The 944 Defendants' conduct was clearly intended to make use of the photograph and likeness of Masterson to increase the popularity of its planned Event, to attract consumers and event-goers, and to trade off of Masterson's celebrity, all to the 944 Defendants' pecuniary gain.

27. Masterson is informed and believes and alleges based thereon that 944 Defendants were all participants, on one level or another, in the misappropriation of Masterson's name and photograph and fraudulently sanctioned the unauthorized use of Masterson's name and photograph for commercial purposes.

28. Masterson has never given permission for his photograph or likeness or name to be used in the Advertisement(s) for the Event or in the Magazine, nor has he been compensated for the same. The name and photograph of Plaintiff were fraudulently and intentionally inserted into the Advertisements, which also resulted in claims by the copyright holder of the photograph against Masterson under the mis-belief that masterson had authorized the use the photograph. Masterson has

never consented to endorse, promote, advertise, recommend or sell 944 Magazine or any of the 944 Defendants' other products, events or services. Further, Masterson has never authorized any of the Defendants to use his name, image, likeness or photograph in connection with any advertisement, promotion, article, event or reference to or regarding 944 Magazine or any of the 944 Defendants' other products, events or services.

29. By these actions, the 944 Defendants have knowingly and fraudulently, and without any right, title or authorization, used Masterson's name, image and likeness for the purpose of falsely advertising, selling and promoting their products, events and services without Masterson's prior consent.

## FIRST CLAIM FOR RELIEF

### (Violation Of California Civil Code §3344)

### Against All Defendants

30. Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 29, inclusive, as though fully set forth herein.

31. At all times relevant hereto, Plaintiff had, and still has, the sole and exclusive right to authorize and license the use of his name, photograph, image and likeness. Plaintiff never consented to the use of his name, image or likeness for any purpose or in any manner by any of the 944 Defendants, and specifically never consented to the use of his name, image or likeness to in the Advertisements or promote Masterson as the featured performer at the Event, nor to endorse, promote, advertise, sponsor or recommend in any manner the Event or any other products of 944 Defendants.

32. Plaintiff is informed and believes and based thereon alleges that the 944 Defendants, and each of them, intentionally, negligently and/or knowingly and fraudulently caused Plaintiff's name, photograph, image and likeness to be utilized

in connection with the promotion or advertising of the Event.

33. Plaintiff is informed and believes and based thereon alleges that the manner in which the Event Advertisements were depicted to the public was grossly misleading and deceptive in that it appears that Plaintiff agreed to appear and perform at, and permit the use of his name, photograph, image and likeness in the manner herein alleged, or promotes and/or endorses the products and/or the 944 Defendants in the manner described when, in fact, he does not and did not consent to any of the foregoing.

34. Plaintiff has developed and cultivated his image and persona to create his celebrity and recognition and the 944 Defendants, and each of them, have, without any right, title or authorization, misappropriated Plaintiff's valuable publicity rights and the resulting success and popularity of Plaintiff by illegally using his name, photograph, image and likeness for the aforesaid commercial purpose.

35. The conduct of Defendants, and each of them, as alleged hereinabove, constitutes a violation of California Civil Code §3344 due to the knowing and unauthorized use by the 944 Defendants, and each of them, of Plaintiff's name, photograph, image and likeness for commercial purposes. Plaintiff's name, photograph, image and likeness have substantial commercial value and Plaintiff has received substantial monies and recognition therefrom, and Plaintiff rarely agrees to license the use of his name, photograph, image or likeness for commercial purposes, and never uses his real name in connection with DJ performances and services.

36. As a direct and proximate result of the aforesaid wrongful acts of the 944 Defendants, and each of them, Plaintiff has been damaged in an amount that is not yet fully ascertainable, but which is believed to be in excess of Two Hundred Thousand Dollars ($200,000). When Plaintiff has ascertained the full amount of damages, he will seek leave of Court to amend this Complaint accordingly.

///

37. As a direct and proximate result of the aforesaid wrongful acts of the 944 Defendants, and each of them, Plaintiff has incurred and will continue to incur substantial attorney fees and costs. Plaintiff is entitled to an award of his attorney fees and costs incurred in connection with this litigation pursuant to Section 3344 of the California Civil Code.

38. By reason of the aforesaid wrongful acts of the 944 Defendants, and each of them, in addition to the relief sought hereinabove, Plaintiff is entitled to an accounting of all gross revenues and profits received, directly and indirectly, by Defendants, and each of them, as a result of the unauthorized use of his name, photograph, image and likeness in the Advertisements, including from any increase in advertising revenues, and to an award of all such sums. By reason of the 944 Defendants', and each of their, wrongful acts and unjust enrichment as alleged hereinabove, the 944 Defendants, and each of them, are involuntary trustees holding all such sums in their possession under a constructive trust for the benefit of Plaintiff with a duty to transfer the same to Plaintiff forthwith.

39. Plaintiff is informed and believes and based thereon alleges that the 944 Defendants, and each of them, in doing the things herein alleged, acted willfully, maliciously, oppressively, and despicably, with fully knowledge of the adverse effect of their actions on Plaintiff and with willful and deliberate disregard of the consequences to Plaintiff. By reason thereof, Plaintiff is entitled to recover punitive and exemplary damages from Defendants in an amount to be determined at the time of trial.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## SECOND CLAIM FOR RELIEF
## (Violation Of Right Of Publicity)
## Against All Defendants

40. Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 29 and 31 through 35, as though fully set forth herein.

41. Plaintiff has starred in numerous hugely successful and popular hit television series and programs, viewed by many millions in the United States and throughout the world. As a result of his well-known and recognizable Hollywood persona and celebrity, Plaintiff has also appeared as himself in a variety of shows and entertainment programs. Masterson is also known to have staring or major roles in several upcoming theatrical motion pictures. Through his hard work and use of his talent in the field of entertainment, Plaintiff's name, image, likeness and persona have become, and are very valuable and were, and are, invested with substantial goodwill in the eyes of the public, including with the demographic of affluent twenty-and-thirty-somethings and those active in the Los Angeles, Orange County, San Diego and Las Vegas night life and club scenes. Accordingly, Plaintiff has a valuable right of publicity, a property right with substantial commercial value, which he has not agreed to transfer, in whole or in part, to the 944 Defendants for any purpose whatsoever. The wrongful acts of the 944 Defendants, and each of them, as alleged hereinabove constitute a violation and misappropriation of Plaintiff's right of publicity, in that the 944 Defendants, and each of them, misappropriated Plaintiff's name, photograph, image and likeness and used them for a commercial purpose to sell, promote and advertise their respective events, services and products.

42. As a direct and proximate result of the aforesaid wrongful acts of the 944 Defendants, and each of them, Plaintiff has been damaged in an amount that is not yet fully ascertainable, but which is believed to be in excess of Two Hundred

Thousand Dollars ($200,000). When Plaintiff has ascertained the full amount of damages, he will seek leave of Court to amend this Complaint accordingly.

43. Plaintiff is informed and believes and based thereon alleges that the 944 Defendants, and each of them, in doing the things herein alleged, acted willfully, maliciously, oppressively, and despicably, and with full knowledge of the adverse effect of their actions on Plaintiff and with willful and deliberate disregard of the consequences to Plaintiff. By reason thereof, Plaintiff is entitled to recover punitive and exemplary damages from the 944 Defendants in an amount to be determined at the time of trial.

### THIRD CLAIM FOR RELIEF
(Quantum Valebant)
**Against All Defendants**

44. Plaintiff repeats, realleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 29, 31 through 35, and 41, inclusive, as though fully set forth herein.

45. The 944 Defendants, and each of them, would only have been entitled to use Plaintiff's name, image, photograph and likeness for commercial advertisement and as the purported featured performed at the Event if Plaintiff had, in fact, agreed to appear therein, use his name and photograph and image thereon, and if Plaintiff had, in fact, been compensated for the use of his name, photograph, image and likeness.

46. Plaintiff is informed and believes and based thereon alleges that as a result of the wrongful acts of the 944 Defendants, and each of them, as alleged hereinabove, Plaintiff is entitled to receive minimum compensatory damages equal to the compensation which Plaintiff would have received for his services in connection therewith.

///

47. The reasonable value of Plaintiff's services and the value of the use of Plaintiff's name, image, photograph and likeness in the manner misappropriated by the 944 Defendants is in excess of Two Hundred Thousand Dollars ($200,000). Plaintiff is entitled to recover said damages from the 944 Defendants and Plaintiff will seek leave of Court to amend this Complaint when the same has been ascertained with greater particularity.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as follows:

**AS TO THE FIRST CLAIM FOR RELIEF:**

1. General and special damages against Defendants, and each of them, in an amount not less than Two Hundred Thousand Dollars ($200,000), in accordance with proof at trial, together with interest thereon at the legal rate;

2. For an award of the gross revenues received by the Defendants as a result of the unauthorized use of Plaintiff's name and photograph;

3. Exemplary and punitive damages in an amount according to proof at the time of trial; and

4. For an award of attorney fees;

**AS TO THE SECOND CLAIM FOR RELIEF:**

5. General and special damages against the Defendants, and each of them, in an amount not less than Two Hundred Thousand Dollars ($200,000), in accordance with proof at trial, together with interest thereon at the legal rate;

6. Exemplary and punitive damages in an amount according to proof at the time of trial;

**AS TO THE THIRD CLAIM FOR RELIEF:**

7. General and special damages against the Defendants, and each of them, in an amount not less than Two Hundred Thousand Dollars ($200,000), according to proof at trial, together with interest thereon at the legal rate;

/ / /

**AS TO ALL CLAIMS FOR RELIEF:**

8. For all costs of suit incurred herein;

9. For reasonable attorney fees as may be provided by law; and

10. For such other and further relief as the Court may deem to be just and proper.

Dated: January 17, 2008

LAVELY & SINGER
PROFESSIONAL CORPORATION
MARTIN D. SINGER
EVAN N. SPIEGEL

By: _____
EVAN N. SPIEGEL
Attorneys for Plaintiff Danny Masterson

### REQUEST FOR JURY TRIAL

Plaintiff hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: January 17, 2008

LAVELY & SINGER
PROFESSIONAL CORPORATION
MARTIN D. SINGER
EVAN N. SPIEGEL

By: _____
EVAN N. SPIEGEL
Attorneys for Plaintiff Danny Masterson

# PROOF OF SERVICE
## FRCP Rule 5

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 2049 Century Park East, Suite 2400, Los Angeles, California 90067-2906.

On January 22, 2008, I served the foregoing documents described as:

**FIRST AMENDED COMPLAINT**

on the interested parties in this action by placing:
[X] a true and correct copy -OR- [ ] the original document thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| John M. Gatti, Esq.<br>GREENBERG TRAURIG, LLP<br>2450 Colorado Avenue, Suite 400E<br>Santa Monica, CA 90404<br>Telephone: (310) 586-7700<br>Facsimile: (310) 586-7800<br>Email: gattij@gtlaw.com | Attorneys for Defendants 944 MEDIA, INC, 944 MEDIA LLC, 944 MAGAZINE LLC, ML MEDICA LLC, AND WENDOH MEDIA LLC |
| Danielle N. DeCou, Esq.<br>GREENBERG TRAURIG, P.A.<br>1221 Brickell Avenue<br>Miami, Florida 33131<br>Telephone: (305) 579-0735<br>Facsimile: (305) 579-0717<br>Email: decoud@gtlaw.com | |

[X] **BY MAIL:**
  [ ] I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.
  [X] As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed January 22, 2008, at Los Angeles, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
MAYRA L. VERA